UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

Isabel Acosta,   Case No.: 18-17471-AJC
   Chapter 13

　　　　Debtor.
_____/

### TRINITY FINANCIAL SERVICES, LLC'S OBJECTION TO DEBTOR'S RENEWED MOTION TO VALUE AND DETERMINE SECURED STATUS [DE 41]

**SECURED CREDITOR,** Trinity Financial Services, LLC (hereinafter referred to as "SECURED CREDITOR"), by and through its undersigned attorney, hereby Objects to the Renewed Motion to Value and Determine Secured Status of Lien on Real Property Held by Trinity Financial Services, LLC, **[DE 41]** and in support states as follows:

1. On or about June 21, 2018, Debtor filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code.

2. On or about July 5, 2018, Debtor filed a Motion to Value and Determine Secured Status alleging that the value of the Property leaves SECURED CREDITOR wholly unsecured. **[DE 13]**.

3. On or about August 10, 2018 the Case was dismissed for failure to appear at the meeting of Creditors. **[DE 26]**

4. On or about September 26, 2018 the Chapter 13 case was reinstated. **[DE 23]**

5. On or about November 12, 2018 the Debtor filed its Renewed Motion to Value and Determine Secured Status of Lien on Real Property Held by Trinity Financial Services **[DE 41]**

6. SECURED CREDITOR needs to formally appraise the Property to determine its true value.

7. The Debtor is claiming the property is worth $ 153,000.00, based on the Miami Dade property appraiser's site, which is known to be historically low.

1

8. Deutsche Bank trustee for Saxon c/o Ocwen Loan servicing, LLC., hold liens on the real property, senior to priority to Lender, securing claims in the aggregate amount of $251,167.82.

9. Based upon sales comps from an internal BPO, the property averages a value of $261,300.00 leaving secured creditor with an estimated $10,132.18 in equity.

10. Moreover, the subject Property is the Debtor's principal residence. Regardless as to whether the SECURED CREDITOR is a secured or unsecured creditor, the particular debt is a security interest on the Debtor's principal residence.

11. In *Nobelman v. Am. Sav. Bank*, 508 U.S. 324 (1993), Debtors sought to reduce an undersecured mortgage on their principal residence to the fair market value of the mortgage residence under 11 U.S.C. §506(a).

12. The Court in *Nobleman* also looked to 11 U.S.C. 1322(b)(2) which allows modification of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence.

13. Under 11 U.S.C. §1322(b)(2), a Chapter 13 plan may, "[subject to §1322(a) and §1322(c)], modify the rights of holders of secured claims, **other than a claim secured only by a security interest in real property that is the debtor's principal residence...**" (emphasis added).

14. Pursuant to 11 U.S.C. §1322, the Debtor may only modify Secured Creditor's rights in two (2) ways. The first is that any delinquency may be cured in the Chapter 13 Plan by paying equal payments into the Plan, and second, if a balloon payment was due before the end of a Chapter 13 Plan, the balloon payment may be paid in equal installments under the Plan. See 11 U.S.C. §1322(c). No other exceptions are noted in 11 U.S.C. §1322 as it relates to the modification of a mortgage holder's rights on his principal residence.

15. Further, there is no distinction as to the type of claim the creditor has against the principal residence except that the claim, whether secured or unsecured by the value of the collateral, must be a security interest on the principal residence.

16. In *Nobleman*, Debtors urged the Court to apply the "rule of the last antecedent" in interpreting 11 U.S.C. §1322(b)(2), which would require that the Court interpret 11 U.S.C. §1322(b)(2) to only mean that the rights of the mortgage holder are unaffected as to the secured portion of the claim. The Court rejected that interpretation and stated that the bank's

contractual rights would necessarily be modified if 11 U.S.C. §1322(b)(2) was to be interpreted to only affect the secured portion of the lien. *Id.* at 329-332.

17. *Nobleman* went further to state, "…to give effect to §506(a)'s valuation and bifurcation of secured claims through a Chapter 13 plan in the manner petitioners propose would require a modification of the rights of the holder of the security interest. Section 1322(b)(2) prohibits such a modification where, as here, the lender's claim is secured only by a lien on the debtor's principal residence."

18. Other Districts have followed *Nobleman* for the proposition that a wholly unsecured lien on a debtor's principal residence may not be stripped or modified in a manner inconsistent with 11 U.S.C. 1322(b)(2). See *In re Frame*, 2009 Bankr. LEXIS 5558 (U.S. Bankr. D. Minn. Sep. 23, 2009). (determination of a secured claim under 11 U.S.C. §506(a) is irrelevant to 11 U.S.C. §1322(b)(2)).

19. The language in 11 U.S.C. 1322(b)(2) is clear and unambiguous as was *Nobleman's* reasoning when it rejected the contention that 11 U.S.C. §506's valuation and bifurcation of claims secured by liens on the Debtor's primary residence is permitted to modify the lien holder's rights. To the contrary, *Nobleman* essentially stated 11 U.S.C. §506 runs counter to 11 U.S.C. §1322(b)(2)'s prohibition against modifying the lien holder's contractual rights except as permitted by 11 U.S.C. §1322(b)(2).

20. In *Bank of Am., N.A. v. Caulkett*, 135 S.Ct. 1995 (2015), the United States Supreme Court citing *Dewsnup v. Timm*, 502 U.S. 410 (1992), fully analyzed 11 U.S.C. §506 as it pertains to Secured Creditor's "secured claim."[1]

21. In *Caulkett*, the Court stated, …an allowed claim 'secured by a lien with recourse to the underlying collateral does not come within the scope of §506(d)' … [and thus] a 'secured claim' is a claim supported by a security interest in property, **regardless of whether the value of that property would be sufficient to cover the claim.**" (emphasis added).

22. Under 11 U.S.C. §1322(b)(2), a Chapter 13 plan may, "[subject to §1322(a) and §1322(c)], modify the rights of holders of secured claims, **other than a claim secured only by a security interest in real property that is the debtor's principal residence…**" (emphasis added).

23. 11 U.S.C. 1322 (c) states in pertinent part that the Debtor may cure a default within the

---

[1] While *Caulkett* was a determination of the availability of "stripping" a junior mortgage in a Chapter 7 case, the undersigned believes that the United States Supreme Court analysis in construing 11 U.S.C. §506 is applicable given §506's interaction with 11 U.S.C. §1322(b)(2) in cases decided before *Caulkett*, namely *Nobleman*.

Chapter 13 Plan, but regular payments are required and the default must be cured.

24. Based upon the foregoing, Debtor in the instant case has two (2) options she may exercise: 1) surrender the collateral, or 2) cure the delinquencies of all mortgages secured by her principal residence in her Chapter 13 Plan. She may not modify the rights of the SECURED CREDITOR.

**WHEREFORE, PREMISES CONSIDERED,** SECURED CREDITOR prays that the Debtor be cited to appear herein; that upon Final Hearing (if necessary) the Court enter an Order denying Debtor's Motion to Value and Determine Secured Status, require the Debtor to pay the SECURED CREDITOR's lien in full, or alternatively, to permit Secured Creditor to take any and all steps necessary to exercise any and all rights it may have in the collateral described hereinabove, and to gain possession of said collateral, together with such further relief and this Honorable Court deems SECURED CREDITOR is entitled.

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was provided via electronic and/or Regular U.S. Mail to the parties listed on the attached service list, on November 30, 2018.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States Bankruptcy Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in the Local Rules.

/s/ Damian G. Waldman
Damian G. Waldman, Esquire
Florida Bar No.: 090502
**Law Offices of Damian G. Waldman, P.A.**
10333 Seminole Boulevard, Unit 1 & 2
Seminole, FL 33778
Telephone: (727) 538-4160
Facsimile: (727) 240-4972
Email: damian@dwaldmanlaw.com
Service Email: bankruptcy@dwaldmanlaw.com
*Attorneys for Secured Creditor*

**CERTIFICATE OF SERVICE**
**I HEREBY CERTIFY** that on this 30th Day of November 2018, I served a copy of the foregoing by regular U.S. Mail or the Court's CM/ECF system to the following parties listed on the below service list:

4

## SERVICE LIST

Trinity Financial Services, LLC
c/o Damian Waldman, Esq.
Law Office of Damian G. Waldman, P.A.
10333 Seminole Blvd., Units 1 and 2
Seminole, FL 33778
damian@dwaldmanlaw.com
bankrutcy@dwaldmanlaw.com
service@dwaldmanlaw.com

Isabel Acosta c/o Haven Del Pino
900 W 49 St. # 422
Hialeah, FL 33012
305-362-6277
Fax : 888-327-2399
Email: haven@delpinolaw.com

*Trustee*
Nancy K. Neidich
www.ch13miami.com
POB 279806
Miramar, FL 33027

*U.S. Trustee*
Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130

**Law Offices of Damian G. Waldman, P.A.**
10333 Seminole Blvd., Units 1&2
Seminole, FL 33778
Telephone: (727) 538-4160
Facsimile: (727) 240-4972
Email:**damian@dwaldmanlaw.com**
Attorneys for Secured Creditor

By:    /s/ Damian Waldman, Esq.
Damian Waldman, Esq.
Florida Bar No.: 0090502